## The Inhabitants of PRINCETON *versus* The COUNTY COMMISSIONERS OF WORCESTER.

Under *St.* 1827, *c.* 77, upon a petition for a new highway, the county commissioners are authorized to lay out an intermediate part only of the highway prayed for [See Revised Stat. *c.* 24, § 5.]

PETITION for a *certiorari.* At the April term of this Court in 1835, the inhabitants of Princeton presented a petition setting forth that at a meeting of the county commissioners in September 1830, Amory Holman and . others petitioned that a new highway might be laid out from the Sink, so called, in Rutland, passing through Princeton and terminating at or near the townhouse in Sterling ; that at a meeting of the commissioners in December 1831, it was adjudged that common convenience and necessity required the location of a new public highway over a part of such route, beginning at the late Barre turnpike road, near Fay's, now Lewis's mills, in the westerly part of Princeton, and terminating at or near the townhouse in Sterling ; that afterwards the commissioners located a public highway from Fay's mills to

near the townhouse in Sterling, and ordered that the same
should be completed ; that such adjudication and the proceedings under it were erroneous and void for this, among other things, to wit, that the highway prayed for was to extend from the Sink in Rutland to the townhouse in Sterling and to accommodate a certain line of travel set forth in the petition of Holman and others, whereas the commissioners, regardless of the wishes of such petitioners, and to accommodate a line of travel altogether different from that contemplated by them, adjudged that a part only of the route of the proposed new highway was of public convenience and necessity.

At the term of this Court in September 1835, the inhabitants of Princeton presented a second petition for a certiorari, by which it appeared, that the commissioners, at a meeting on November 6, 1832, after hearing all the parties in interest, proceeded to locate a public highway over a part only of the route described in such adjudication, beginning at a stake and stones at the southerly end of Lewis's dam in the westerly part of Princeton and terminating near Moses G. Cheever's dwellinghouse in Princeton, being a distance of three miles forty-three rods and ten links. It further appeared, that the discontinuance of a portion of the highway, was ordered upon the petition of the inhabitants of Princeton, before it was fitted for travel ; and that they were directed to complete the highway to the acceptance of the commissioners, by July 1, 1834.

*J. Davis* and *Washburn*, for the petitioners.                      *Oct. 2d.*

*Barton* and *W. Lincoln*, contrà, cited *West Boston Bridge* v. *County Commissioners of Middlesex*, 10 Pick. 270.

SHAW C. J. delivered the opinion of the Court. The         *Oct. 5th.* principal question considered in the present case, is, whether the county commissioners of this county exceeded their authority in laying out a section of highway in the town of Princeton, upon a petition praying for the laying out of a new highway of much greater length, the section thus laid out lying between the same *termini.*

The commissioners adjudged that portion of the highway prayed for, adjoining the eastern *terminus* and extending four or five miles from it, to be of common convenience and

necessity and laid it out accordingly. A part of this high-way, however, was on a subsequent petition and hearing discontinued, before it was made and fitted for travel, being that part next to the original eastern *terminus,* so that the highway, as ultimately established, did not extend to either original *terminus.* We do not consider this as making any difference, however, because if the Commissioners can legally lay out any part of a highway prayed for, less than the whole, it may as well be an intermediate section, as a section at either end.

But it is contended, on the part of the present petitioners, that the petition for a highway prayed for, is one entire thing or subject matter of judicial consideration and decision, and that it must be granted in whole, or rejected in whole.

As a general rule, supposing the question to stand on the general statute of 1786, *c.* 67, § 4, giving power to the Court of General Sessions, upon application made therefor, to lay out new highways, or to alter or turn those already estab-lished, without any express limitation, the construction con-tended for would hardly seem to be analogous to the course of judicial proceeding, where usually, upon the maxim that the whole embraces all the parts, a prayer, claim or demand for a larger sum or quantity, is taken to be a prayer or claim for all the sums or parts of which it is composed, and under such claim the party shall recover such part as he can establish a title to. In a recent case on the present circuit, it was held that a complaint under the mill acts, for the assessment of past and future damages, might be good for past damages, it being shown, that the petitioner had no claim against the same respondent, for future damages. (*Palmer Co.* v. *Ferrill, ante,* 58.) Nor is there any case that I am aware of, in which it has been held that under the statute of 1786, the Court of Sessions could not lay out part of the highway prayed for. In *Commonwealth* v. *Cambridge,* 7 Mass. R. 158, where it appeared by the record that two alterations of a highway had been prayed for, one of which only was granted, this exception was not taken, though the case seems to have been sharply contested, and the proceedings were quashed upon other grounds. I make these suggestions, not

as the ground of any decision of the Court, but to prevent too ready a conclusion that we yield a point apparently conceded by both parties in the argument, that under the statute of 1786 the Court of Sessions had no implied authority to lay out part of a highway prayed for ; such perhaps may be found to be the true construction of the statute upon a careful examination of its provisions and the decisions and practice under it, bi of this we give no opinion, it not being necessary to the decision of the case under consideration.

But the Court are of opinion that the power in question, being given in clear and explicit terms, by the statute of 1825, was by the subsequent statute of 1827 transferred to, and vested in, the county commissioners, and that this power is not limited, restrained or qualified, by any other part of the statute. The former statute, (*St.* 1825, *c.* 171, § 3,) provides, that said commissioners, upon said petition being preferred &c., shall proceed to view &c., and shall have power to order and determine upon the making, altering, turning or discontinuing such highway *or any part thereof.* By *St.* 1827, *c.* 77, the whole system was changed ; the Court of Sessions, which had existed in some form, upwards of a century, was abolished, and superseded by a board of county commissioners, and the duties and functions which had been variously distributed among Courts of Sessions and locating committees, and exercised, under the late statute, by commissioners of highways, were transferred to the county commissioners. This statute, § 4, after having directed the appointment and qualifications of county commissioners, provides, that " from and after the passing of the act, the said county commissioners shall have, exercise and perform, except so far as the same are modified by the provisions of this act, all the powers, authorities and duties, which before and until the passing of this act, the several Courts of Sessions or commissioners of highways, have by law, had, exercised and performed."

It is in virtue of this provision, that the county commissioners exercise the general administrative authority over the police and general affairs of the county. There is no specific enumeration of powers or duties. It was contended, that the power of laying out the highway prayed for, or part thereof,

as given by the former statute, was modified by the provis-ions of the 7th section of this act. That section is obviously intended to direct the general course of proceeding ; it cer-tainly does not limit the powers before given, in terms, and we think it does not by implication. It directs that notices shall be given, the commissioners may view, &c. &c., and adjudicate upon the common convenience and necessity of laying out, altering or discontinuing the highway or road. Such implication is supposed to arise from the omission of the words, " *or any part thereof ;* " but we think it will not bear that construction. This express power having been given, by a previous section, in general terms, unless modified by this act, the modification must appear by express terms or necessary implication. If it was intended, as suggested in the argument, to limit or take away the power of granting part of a highway prayed for, which had been given in express terms to the commissioners, for whom these were substituted, by an act then recent, and repeatedly referred to by the framers of this, especially if this power was intended to be withdrawn, with purpose and deliberation, as a power unnecessary, dan-gerous and capable of abuse, we think it would have been done in a form leaving no doubt of the intention of the legis-lature. On this comparative view of the statutes, the Court are of opinion that the county commissioners did not exceed their authority in this instance, and that their proceedings in this respect were valid

*Petition dismissed*