COMMONWEALTH *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

Hampden.     September 22, 1889. — November 27, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*County Commissioners — Way — Alteration — Discontinuance.*

County commissioners, upon a petition praying for the alteration of an existing
road as " hilly and rough " between a point therein and its terminus in a high-
way after crossing a railroad at grade, laid out a new piece of road, which, after
diverging from the existing road at the point named and running in the same
general direction, crossed the railroad also at grade, and terminated in the same
highway at a somewhat different place. *Held*, that the new piece of road was
a substitute for the old, and that the old road between the point of divergence
and its former terminus was discontinued.

INDICTMENT for obstructing a highway in Chester. At the
trial in the Superior Court, before *Sherman*, J., the following
facts were agreed.

The road, of which the alleged highway in question was a
part, extended in a generally easterly direction from Blandford
to Chester, but from the top of Smith Hill, so called, in Chester,
it ran in a direction somewhat north of east until, after crossing
the defendant's railroad at grade, it joined the old Springfield
and Albany turnpike road, which at that point was east of the
railroad and parallel with it, and connected Chester Factories and
Huntington. In 1855 a petition was filed with the county com-
missioners, alleging that the highway in question, called therein
the "east road," and described as leading from Blandford to
Chester Factories, "is hilly and rough at the north end; that
public convenience requires an alteration to be made in said
road, commencing at the top of Smith Hill, so called, in Ches-
ter, thence running in a northeast direction until it intercepts
the road leading from Chester Factories to Huntington," and
praying the commissioners "to view the premises and take such
action as the public good requires." After due proceedings had
upon this petition, the commissioners granted the prayer of the.
petitioners, and located a new piece of road, forty rods and eight
links in length, by the following order: " Commencing at a

stone monument on the westerly side of the old Springfield and Albany turnpike road, then running " south and west by various courses and distances " to a stone monument on the northerly side of an old road. . . . The first course is six rods wide at the commencement, and three at the end, with straight side lines, and the remainder of the highway is three rods wide." In accordance with this order, the new piece of road was built, diverging from the old road on the top of Smith Hill, where was placed the "stone monument on the northerly side of an old road " referred to in the order, and, after running somewhat more north of east than the old road and crossing the defendant's railroad again at grade, it formed a new junction with the turnpike road at the " stone monument on the westerly side " of it, at a point nearer Chester Factories by about thirty rods than the old junction.   About January 1, 1885, the defendant erected upon its own land a fence across the old road, at its junction with the turnpike road, which fence was the obstruction complained of.

At the time the new piece of road was built, the railroad at the old crossing was planked, its rails were guarded, and a signboard of warning was there placed across the old road, all of which continued for many years afterwards.   The town of Chester kept the old road in repair for ten years after the building of the new road, and travellers continued to pass and repass along the old road to and across the defendant's railroad until the fence referred to was built.   One Smith, whose shop was upon the turnpike road nearly opposite its junction with the old road, had within ten years bought land upon the old road and erected a dwelling-house upon it, and by reason of the obstruction in question was obliged to go around by the new road to reach his shop, and to go to either Chester Factories or Huntington.

The judge ruled, as matter of law, that the proceedings of the county commissioners and their adjudication, and the construction of the new road in accordance therewith, did not discontinue the old road, and, after the defendant had consented to a verdict of guilty, reported the case for the determination of this court.

If the ruling was incorrect, the verdict was to be set aside, and

judgment was to be entered for the defendant; otherwise, the verdict was to stand.

*G. M. Stearns*, for the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

KNOWLTON, J.   The defendant contends that the adjudication of the county commissioners, and the construction of the new piece of road in accordance with it, operated as a discontinuance of that part of the old road which lies between the old turnpike road and the southerly terminus of the new piece of road.   If this contention is correct, the verdict is to be set aside, and judgment is to be entered for the defendant.

The facts agreed, as to what occurred after the change was made, are of little significance, because the road either was or was not discontinued by the executed order of the county commissioners.   The subsequent conduct of other persons, showing their opinions as to the legal effect of what had been done, cannot change the construction which should be put upon the proceedings of a judicial tribunal.   These facts are competent only so far as they tend to show the nature and condition of the subject matter under consideration at the time the adjudication was made.

It has often been decided that an alteration of a way by the construction of it in a different place, where it will serve all the purposes for which it was designed or used, works a discontinuance of that part of it not included in the new location, without express words to that effect.   *Commonwealth* v. *Westborough*, 3 Mass. 406.   *Commonwealth* v. *Cambridge*, 7 Mass. 158.   *Bowley* v. *Walker*, 8 Allen, 21.   *Bliss* v. *Deerfield*, 13 Pick. 102. *Johnson* v. *Wyman*, 9 Gray, 186.   *Hobart* v. *Plymouth*, 100 Mass. 159.   If the new piece of road, after diverging from the old road, turned into it again before reaching the turnpike road, the case would be too plain for argument.   Does the fact that it continues on and enters the turnpike road at a different point change the result?   That such a fact does not necessarily make any difference is assumed in the opinion in *Goodwin* v. *Marblehead*, 1 Allen, 37.

In the present case the petition calls the road, of which the old piece of road was a continuation, "the east road leading from Blandford to Chester Factories."   It describes it as "hilly

and rough at the north end." The north end terminated in the turnpike road, which is also called in the petition "the road leading from Chester Factories to Huntington." The petition then prays for an alteration of it, "commencing at the top of Smith Hill, so called, in Chester, thence running in a northeast direction until it intercepts the road" called in the commissioners' order the "old Springfield and Albany turnpike road." It deals with it as a part of the system of roads which leads from Blandford to Chester Factories, and asks for a change in it, commencing at a point named and running to its terminus, so as to connect with the next road in that system at a different point. The county commissioners granted the prayer of the petition, and there is nothing in the language of the petition, or of the adjudication, to suggest that anything else was contemplated than a substitution of a new piece of road for an old one on the same general line of travel; and we find nothing in the locus to indicate a different intention. So far as appears, there was no landowner on the old piece of road, or in that vicinity, who would be unfavorably affected by the discontinuance of it. Neither the petition nor the report says anything of any part of the public who would be so affected in their travel. If this road was used by any persons in connection with the turnpike road between the former junction and Huntington, the distance to be travelled was slightly increased. The report also indicates that the county commissioners provided for such a possible use by making the new piece of road six rods wide at its junction with the turnpike road, thus cutting off the corner towards Huntington. Against the natural inference from the language of the record, we can see nothing in the case to justify us in finding an intention on the part of the county commissioners that the town should continue to maintain the old road, which was rough and hilly, and that the railroad company should maintain two grade crossings with so short a distance between them. Upon the facts agreed, we are of opinion that the road between the turnpike and the junction of the new road was lawfully discontinued.

*Verdict set aside, and judgment for the defendant.*