<hr />

ALBERT N. BLISS & others *vs.* INHABITANTS OF ATTLEBOROUGH.

Bristol.　　October 27, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Way*, Public.　*Grade Crossing Acts.*

Every part of a public way once duly laid out continues to be such until legally discontinued.

Under the provision of R. L. c. 111, § 152, (St. 1906, c. 463, Part I. § 36,) concerning the abolition of grade crossings, that "The commission shall specify what portion, if any, of an existing public or private way shall be discontinued, the grades for the railroad and the way, the general method of construction and what land or other property it considers necessary to be taken," if a specification of a discontinuance of a portion of a public way under this statute can be found to have been made by implication, which is at least doubtful, a specification, in a report of the commission confirmed by a decree of the Superior Court, that the grade of a certain street shall be changed so that it may be carried under the railroad, that the street shall be graded to a width named and that suitable curbstones, gutters and sidewalks shall be built, following in the report specifications for the grading of some streets and for the discontinuance of parts of others, is not a discontinuance of such portion of the way as lies outside the grade line established by the commissioner's report, and such portion, left at its old grade, still remains a part of the highway subject to the public easement, especially where in taking a parcel from the owner of the adjoining land, whose ownership extends to the middle line of the street, the commissioners describe the parcel as bounded by the line of the street as existing before the report was made.

PETITION, filed on April 21, 1906, for the assessment of damages caused by the abolition of the grade crossing of Park Street in Attleborough by the railroad of the Boston and Providence Railroad Company.

In the Superior Court the case was tried before *White*, J. The property of the petitioner was on the southerly side of

Park Street next west of the railroad crossing. The decree of the Superior Court, confirming the report of the commissioners, changed the grade of Park Street so that it might be carried under the railroad, and contained the following paragraph :

" Park Street shall be graded to a width as shown on plans at the grades hereby established and the railroad shall be carried over it by a stone arched bridge sufficient for four tracks, with two spans each of forty (40) feet clear width, having a clearance of thirteen (13) feet from the crown of the street to the soffit of the arch on its centre line. Suitable curbstones, gutters, and sidewalks shall be built wherever they now exist or are necessary and the surface of the sidewalk shall be of brick, concrete or gravel, and the roadway shall have a macadam surface."

The work prescribed by the decree was done. The portion of Park Street within the grade lines shown on the commissioners' report was cut down in front of the petitioners' property as therein called for. A portion of the old sidewalk about nine or ten feet wide in front of the petitioners' property was left unchanged; a new sidewalk was constructed farther out at the new grade, as called for by the decree; and a fence or guard rail was erected along the cut in the old sidewalk in front of the petitioners' premises. The result was to leave the petitioners' property in the condition described in the opinion.

At the close of the evidence the petitioners asked the judge to make the following rulings :

1. The petitioners have no right to use for building purposes any land in front of the slanting line shown on the grade crossing abolition plan as the southerly line of Park Street.

2. The southerly line of Park Street is the line of the layout of 1884. The petitioners have no right to build upon any land north of that line.

3. There has been no discontinuance or abandonment of any part of Park Street in front of the petitioners' premises as laid out in 1884.

4. The petitioners have no right to bring their building forward to the cut in the sidewalk.

The judge refused to make these rulings, and also refused to make three other rulings requested by the petitioners, which this

court found it unnecessary to consider.   He instructed the jury in accordance with his ruling as stated in the opinion.

The jury returned a verdict for the petitioners in an amount substantially less than that claimed by the petitioners, although more than that testified to by the respondent's witnesses; and the petitioners alleged exceptions.

*J. M. Morton, Jr.*, (*R. C. Estes* with him,) for the petitioners.

*J. L. Hall*, for the respondent.

SHELDON, J.   The fundamental question in this case is whether the effect of the proceedings for the abolition of the grade crossing of Park Street by the Boston and Providence Railroad was to discontinue that part of Park Street which lay between the petitioners' estate and the line of the new grading of that street.   The petitioners' ownership extended to the middle line of the street; and if there was such a discontinuance, the full title to the part so discontinued as a highway reverted to them.   There was no vote of the town discontinuing this portion of the street; there was no express provision for its discontinuance or abandonment in the report of the commissioners, which was confirmed by a decree of the Superior Court.   But there was ample evidence, and we do not understand that it was disputed, that the effect of the changes in the grade of Park Street and of the construction of the embankment and retaining wall by which the railroad was carried over the street, was such that the part of the highway alleged to have been discontinued was practically, as it was left by the new construction, no longer adapted or available for use as part of the highway, and could not become so except by working it down to the new grade, and even then leaving its width to abut directly against the dead end created by the retaining wall of the railroad embankment.

The contention of the respondent is that the order in the commissioners' report that Park Street should be graded to the width to correspond to the bridge by which the railroad was to be carried over the street with suitable curbstones, gutters and sidewalks, amounted to an alteration or relocation of the street, and that the discontinuance of so much of the old way as was not included in the new location resulted from the alteration *ipso facto*, without any express words of discontinuance. *Johnson* v. *Wyman*, 9 Gray, 186.   *Bowley* v. *Walker*, 8 Allen, 21.

*Hobart* v. *Plymouth*, 100 Mass. 159. The respondent's counsel refer also to *Commonwealth* v. *Boston & Albany Railroad*, 150 Mass. 174; *Commonwealth* v. *Westborough*, 3 Mass. 406; *Commonwealth* v. *Cambridge*, 7 Mass. 158; *Bliss* v. *Deerfield*, 13 Pick. 102; and *Sprague* v. *Waite*, 17 Pick. 309. But as to most of these decisions it is enough to say that there has been here, as has been stated already, no action by the town or its officers either discontinuing any part of this street or altering or relocating it; and the mere fact that only a part of the space included within the original street lines is wrought for use as a way is not of itself enough to show a discontinuance by the town. No such contention ever has been made to our knowledge; and *Johnson* v. *Wyman*, 9 Gray, 186, is a direct authority against its being made. A way once duly laid out continues to be such until legally discontinued. *Loring* v. *Boston*, 12 Gray, 209. *Harrington* v. *County Commissioners*, 22 Pick. 263. *Stetson* v. *Faxon*, 19 Pick. 147. Nor is it contended that the disclaimer filed by the respondent and not accepted by the petitioners could of itself operate as a discontinuance or abandonment. The case must be determined by the action of the commissioners, upon which the ruling made at the trial was rested.

That ruling was in substance that the report of the commissioners, having been duly confirmed, operated as matter of law as a discontinuance or an abandonment of all that portion of the highway which lay between the petitioners' property and the grade line established in the commissioners' report; and that the land over which the highway was thus discontinued reverted to the petitioners, and the increase thus caused to the value of their estate was to be set off against their damages.

The power of these commissioners was given by R. L. c. 111, §§ 149 *et seq.* See now St. 1906, c. 463, Part I. §§ 29 *et seq.* The commission was required by R. L. c. 111, § 152, (St. 1906, c. 463, Part I. § 36,) to " specify what portion, if any, of an existing public or private way shall be discontinued, the grades for the railroad and the way, the general method of construction and what land or other property it considers necessary to be taken." It is at least doubtful whether under this requirement a discontinuance could be found to have been made by implication. Certainly, when the statute requires specification not only of any

such discontinuance, but also of the grade which is to be established, it would be yet more difficult to infer one of these requisites from a declaration of the other. But we need not consider this general question; for we are of opinion that their report, which has been laid before us, shows no intention to discontinue this part of Park Street.

The commissioners, having no doubt in mind the requirement of the statute that they should specify what portions of any streets were to be discontinued, have expressly provided in their report for many discontinuances. The provision as to the grade of Park Street is closely preceded by a statement that "the way known as Starkey Avenue is hereby discontinued" within certain limits stated. It is immediately preceded by an order for the change of grade of Hope Street without the discontinuance of any part thereof, and for the grading of Holden Street extension, which the report had just laid out forty feet wide, to a width between certain fences of twenty-six feet. There are also provisions for the discontinuance of parts of Mill Street, South Main Street, Maple Street, Thurber Avenue, and Mendon Road. A new way, called Olive Street Extension, is laid out forty feet wide, and is ordered to be graded to the width of thirty-five feet, so as to cross the railroad by a bridge. Another way, called Thurber Avenue, is laid out in place of that part of Thurber Avenue which was discontinued, forty feet wide, and ordered to be graded to the width of twenty feet, so as to cross the railroad by a bridge of that width.

These examples show clearly that the commissioners had in mind the distinction between the width of the lay-out of a street and the width to which it is to be graded or wrought for travel. They speak with precision of each of these two subjects; they must be taken with references to each of them to have meant just what they said; and there is no ground to infer that they intended a provision for the one to be inferred from a provision for the other. In the absence of any provision for an alteration of the lines of Park Street or for the discontinuance of any part thereof, we cannot say that such a provision is necessarily implied from the language of their report.

Moreover, in describing a parcel of land taken from the petitioners' estate, the commissioners describe it as bounded by the

line of Park Street, which can mean nothing but the line as existing before the report was made, and certainly indicates that there was no intention to operate a change in that line.    But if that line remained unchanged, there could be no discontinuance or abandonment of any part of the existing location of the street.

Accordingly the petitioners' damages should not have been diminished by any set-off for a partial discontinuance or abandonment of the street, and the first four of their requests for rulings should have been given.    It does not seem likely that the other questions raised by the exceptions will be presented again in the same way, and they need not be considered.

*Exceptions sustained.*