# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

JANE R. RECORE, individually and as executrix,[1] & another[2] *vs.* TOWN OF CONWAY & others.[3]

No. 00-P-1868.

Suffolk. May 14, 2003. - August 21, 2003.

Present: MASON, BERRY, & KAFKER, JJ.

*Practice, Civil,* Appeal, Findings by judge. *Way,* Public: discontinuance. *Subdivision Control,* Frontage on public way. *Words,* "Alteration."

In an action seeking a declaration that a way shown on a proposed subdivision plan for certain land was a county highway and, hence, could be used to satisfy the frontage requirement established by a town's zoning by-law for a buildable lot, the Land Court judge correctly determined that an order of the county commissioners entered in 1845 constituted an alteration of the existing highway, rather than the laying out of an entire new highway, and, consequently, automatically discontinued the way shown on the plaintiffs' plan as a county road so that it could not be used to satisfy the frontage requirement. [5-9]

[1] Of the estate of Eva M. Rutkowsky-Root.
[2] Michael J. Kurkulonis.
[3] Board of selectmen of Conway, planning board of Conway, and zoning board of appeals of Conway.

CIVIL ACTION commenced in the Land Court Department on June 2, 1998.

The case was heard by *Mark V. Green*, J.

*Michael Pill* for the plaintiffs.

*John H. Fitz-Gibbon* for the defendants.

MASON, J. Jane R. Recore and Michael J. Kurkulonis commenced this action in the Land Court in June, 1998, seeking a declaration that a way shown on their proposed subdivision plan for certain land in Conway was a "county highway"[4] and, hence, could be used to satisfy the frontage requirement established by the town's zoning by-law for a buildable lot.[5] The way was designated on the plan as "Old Poplar Hill Road."[6]

A Land Court judge determined that the way had once been part of a county highway but had been discontinued in 1845 when the Franklin County commissioners had altered the location of that highway. See, e.g., *Inhabitants of Cohasset* v. *Moors*, 204 Mass. 173, 175-176 (1910) (alteration of county highway automatically discontinues portion of former layout that is not contained within new layout). The judge accordingly determined that the way could not be used to satisfy the frontage requirement.

On appeal, the plaintiffs contend that the judge erred in construing the action taken by the commissioners in 1845 as the alteration of an existing highway rather than the laying out of an entirely new highway. They also contend that the judge erred in "vacating" an action the commissioners had subsequently taken in 1847, when they expressly discontinued only a portion of the former highway. We affirm the judgment.

*Facts.* We summarize the facts from the judge's findings

---

[4]Recore had entered into a contract to sell the land to Kurkulonis who, in turn, was proposing to divide the land into thirty-five lots, each proposing frontage on the way.

[5]Article 4, § 41.1, of the by-law requires, among other things, that a buildable lot have a minimum of 200 feet of frontage on a "public way." Article 5 of the by-law in turn defines a "public way" as a "state highway, a county road or a road which has been accepted by the Town of Conway as a town road."

[6]A sketch showing the planned subdivision together with the area surrounding it is attached as an appendix to this opinion.

and the uncontradicted evidence in the record. In 1766, acting on a petition by the inhabitants of Hatfield, Deerfield, and Ashfield, a court of general sessions[7] entered an order laying out a county highway running from Ashfield east to Conway and then south through West Whately to Hatfield.[8] The way shown on the plaintiffs' proposed subdivision plan as "Old Poplar Hill Road" was included within that portion of the 1766 highway that extended from a house south of the Conway town center down to the Hatfield town line.

In 1810, a further order was entered laying out a way from the Conway town center to the start of Poplar Hill Road. This new way was known as Field's Hill Road and, together with Poplar Hill Road, provided a direct line of travel from the Conway town center south to West Whately and then to Hatfield.

In 1845, however, James V. Whitney and others filed a petition with the Franklin county commissioners representing

> "that the direct road from Conway to Northampton is very hilly and much exposed to be obstructed in winter, that the part between the Congregational meeting house in Conway and the line of the County of Hampshire leading by or near Asa Sanderson's in West Whately is susceptible of great improvement, and that the expense of making a new road part of the way and some improvements in the old road between these termini may be brought within the reasonable expectations of the County."

The petition requested that the commissioners "cause such new road and such alterations and amendments of old road between the said termini to be made as public convenience and necessity require."

In response to this petition, the county commissioners authorized the layout of a new road running from the common in the Conway town center to the center of West Whately. The

---

[7]Prior to the 1820's, the layout, alteration, and discontinuance of county highways was the responsibility of courts of general sessions, rather than county commissioners. See *Inhabitants of Princeton* v. *County Commrs. of Worcester*, 34 Mass. 154, 157 (1835).

[8]At that time, Conway was part of Deerfield, and Whately was part of Hatfield. The boundary between present-day Conway and Whately was, in 1766, the boundary between Deerfield and Hatfield.

new road, known as Whately Road, ran west of, and roughly parallel to, Field's Hill Road and Poplar Hill Road. It left Field's Hill Road just south of the Conway town center and then rejoined Poplar Hill Road in the center of West Whately.

In 1846, Henry P. Billings and others filed with the commissioners a further petition requesting discontinuance of a highway in Conway and Whately. The petition stated:

> "[I]n consequence of the opening of the new road from Conway to West Whately, . . . that portion of the old road leading from the bars at the North West corner of Phineas Bartlett Esq.'s pasture as far as David Field's house and also that portion of said road leading from Lincoln Root's farm house to Chester Brown's farm, in Whately, . . . are no longer needed, either for public or private use."

In response to this petition, the commisioners on December 14, 1847, entered an order adjudging that "common convenience and necessity require that the first piece of said old road, to wit, from Phineas Bartlett's pasture bars to David Field's house, be discontinued, and that portion of said road, and that only, is hereby discontinued."

In 1899, Seth B. Crafts and others petitioned the commissioners for the discontinuance of Poplar Hill Road in Whately "from the Conway line southerly to a point near the tenement house of Victor D. Bardwell." In response to this petition, the commissioners ordered that portion of the road discontinued.

In 1924, the then Franklin County engineer, acting under the direction of the Franklin County commissioners, compiled a series of maps showing "County Roads in Franklin County," as of January 1, 1924. That compilation showed the portion of Poplar Hill Road bisecting the locus as discontinued and gave as a reference the 1847 discontinuance order.

Poplar Hill Road as it existed at the time of trial was neither paved nor graveled. It had a steep grade in parts and was deeply rutted. There were tree stumps in the road.

*Proceedings.* The plaintiffs called three witnesses at trial, including David Werner, a land surveyor who prepared the plan for Recore's land; William Allen, a civil engineer who was county engineer for Franklin County from 1988 through 1995;

and James Toth, who was regional engineer for the Franklin regional council of governments. Werner testified that, in preparing the plan for Recore's land, he had reviewed the 1847 and 1899 discontinuances and had concluded that because neither of them had discontinued the portion of Poplar Hill Road running through the land, it was still an active county highway.

Allen testified that he had reviewed the records maintained by the Franklin county commissioners while he was county engineer and had similarly concluded that the portion of Poplar Hill Road running through Recore's land had not been discontinued. Allen stated that he had reached this conclusion because the David Field's house referred to in the 1847 discontinuance was located on Field's Hill Road north of the land and, hence, the 1847 discontinuance could not have affected the portion of Poplar Hill Road running through the land.

Finally, Toth testified that, based on Allen's review of the documents, he had sent a letter to Kurkulonis on May 13, 1997, stating that in his opinion, Poplar Hill Road "remains an active County Highway today."

The defendants did not call any witnesses but rather relied on cross-examination of the plaintiffs' witnesses and also various documents and maps that were introduced as exhibits.

*Discussion.* An appellate court's "duty is to accept the trial judge's findings of fact unless they are clearly erroneous." *Tamerlane Realty Trust* v. *Board of Appeals of Provincetown*, 23 Mass. App. Ct. 450, 453 (1987). See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). Legal conclusions drawn from those facts, however, are subject to de novo review. See *Bowman* v. *Heller*, 420 Mass. 517, 522 n.6, cert. denied, 516 U.S. 1032 (1995).

1. *Construction of 1845 authorization.* It has been settled since at least the early 1800's that "establishing an alteration in a way is, in law, a discontinuance of the part altered . . . ." See *Commonwealth* v. *Inhabitants of Westborough*, 3 Mass. 406, 407 (1807). For purposes of this rule, the term "alteration" has been used technically "to distinguish between the making of an entire new way, and changing the location [of an existing way] in one or more intermediate sections." See *Inhabitants of*

*Gloucester* v. *County Commrs. of Essex*, 44 Mass. 375, 379 (1841).

The plaintiffs do not dispute these general principles. Nevertheless, they contend that the judge erred in construing the action taken by the commissioners in 1845 as the alteration of the existing highway rather than the laying out of an entirely new highway. More specifically, the plaintiffs contend that the commissioners' intent to lay out an entirely new highway, rather than alter the existing highway, is shown by their failure to include any discontinuance language in their 1845 order and also by their action just two years later of discontinuing a portion of the old highway and expressly refusing to discontinue the rest of the highway. Also, citing the decision of Chief Justice Shaw in *Johnson* v. *Wyman*, 75 Mass. 186 (1857), the plaintiffs contend that the judge was actually precluded from finding an intent on the part of the commissioners to discontinue the part of the road passing through Recore's land because the defendants failed to introduce any evidence that that part of the road had become utterly useless, as distinct from showing simply that it was not being used.

It is well settled, however, that the action taken by county commissioners in any given case must be construed in light of the petition giving rise to the action. See *Goodwin* v. *Inhabitants of Marblehead*, 83 Mass. 37, 38 (1861). This is because the petition provides the foundation for the entire proceeding, *ibid.*, and, hence, necessarily circumscribes the commissioners' power to act. See *Commonwealth* v. *Inhabitants of Cambridge*, 7 Mass. 157, 163 (1810); *Bennett* v. *Inhabitants of Wellesley*, 189 Mass. 308, 315 (1905).

Here, the petition leading to the commissioners' 1845 authorization order did not request the laying out of an entire new highway between any two points. Rather, after reciting that the part of the existing highway running between the center of Conway and the Hampshire county border was "susceptible of great improvement" and that "the expense of making a new road part of the way and some improvements in the old road between these termini may be brought within the reasonable expectations of the County," it requested only that the commissioners "cause such new road and such alterations and amend-

ments of the old road between the said termini to be made as public convenience and necessity require . . . ." This language plainly indicated that the petitioners were requesting an alteration of the existing highway, rather than the laying out of an entire new highway.[9] See *Inhabitants of Gloucester* v. *County Commrs. of Essex*, 44 Mass. at 379 ("the term 'alteration' has been used technically to distinguish between the making of an entire new way, and changing the location in one or more intermediate sections"). See also *Johnson* v. *Wyman*, 75 Mass. at 189 ("An 'alteration' ex vi termini means a change or substitution of one thing for another").

Moreover, the commissioners' subsequent order entered in response to the petition did not authorize an entire new way between the termini mentioned in the petition, i.e., Conway center and the Hampshire county line. Rather, it authorized a new way for only part of that distance, i.e., from Conway center to West Whately. This is another strong indication that the commissioners were authorizing the alteration of an existing highway, rather than the laying out of an entire new highway. See *Inhabitants of Gloucester* v. *County Commrs. of Essex*, 44 Mass. at 379.

In light of the language contained in the petition and the limited nature of the commissioners' subsequent order, we are of opinion that the Land Court judge correctly determined that the order constituted an alteration of the existing highway, rather than the laying out of an entire new highway, and, hence, that it automatically discontinued the parts of the highway so altered. "Discontinuance" language in the commissioners' order was unnecessary in light of the well settled principle that the alteration of an existing way automatically discontinues the part altered. See *Commonwealth* v. *Inhabitants of Westborough*, 3 Mass. at 407.

It does not derogate from our conclusion that the commissioners in 1847, in response to a further petition, expressly discontinued one part of the old highway but not another part of

[9]We reject the plaintiffs' contention that the petition could fairly be read as requesting either the establishment of an entire new highway or an alteration of the existing highway. Nothing in the pertinent language indicated that the petitioners were making alternative requests.

the old highway. While the plaintiffs produced some evidence as to the location of the part of the highway that the commissioners expressly discontinued, they produced no evidence as to the location of the part of the highway that the commissioners declined to discontinue. That part may not have been replaced by the new road. In any event, the commissioners' refusal to act on the second portion of the petition may have been based not on any substantive judgment, but rather on a simple conclusion that no such action was necessary or desirable at that time. It does not by itself show that the commissioners intended to retain parts of the prior road that were replaced by the new road. Cf. *Witteveld* v. *Haverhill*, 12 Mass. App. Ct. 876, 877 (1981) (commissioners' discontinuance of portion of road did not necessarily suggest that public way had previously existed).

Chief Justice Shaw's opinion in *Johnson* v. *Wyman*, 75 Mass. at 188-190, lends no comfort to the plaintiffs' position. In that case, there was an absence of any record either of the initial laying out of the road in question or of the subsequent alleged alteration of that road. *Id.* at 187. It was only in that context that Chief Justice Shaw opined that the party asserting discontinuance was required to prove that the road had become useless. *Id.* at 189-190. Here, by contrast, there was a record of the initial laying out of the road in question as well as the subsequent alteration of that road, and it was clear from those records what the commissioners intended to do. Hence, there was no need for the defendants to produce evidence that the portions of the road that had been altered by the commissioners' action had become useless. See *id.* at 189.

In fact, as the judge expressly noted, this case is similar to *Hobart* v. *County of Plymouth*, 100 Mass. 159 (1868), rather than to *Johnson* v. *Wyman, supra.* In the *Hobart* case, as here, a petition had been filed with county commissioners reciting that an existing road was "narrow, crooked and inconvenient" and praying "that a view of the same may be had, and that the same may be widened, straightened and new located, and such parts discontinued as may be rendered unnecessary by such locations and alterations." *Id.* at 160. The trial judge ruled that the order the commissioners had entered in response to the petition had operated as a discontinuance of so much of the old road as was

not included in the new location, and the Supreme Judicial Court affirmed. The court in *Hobart* v. *County of Plymouth*, 100 Mass. at 165, stated:

> "The commissioners, in their report, do indeed state, in regard to the portion of the new location which crosses the petitioner's land, that they 'then proceeded to locate a new highway.' But the whole proceeding, taken together, is one of mere alteration and new location of an old road. The petition, as recited in their report, prays for that and nothing else . . . . The intermediate portion must therefore be regarded as an alteration only, in its legal effect, notwithstanding the fact that it is called a 'new highway.' "

The plaintiffs assert that the court's decision in *Hobart* is not applicable here because the petition at issue in *Hobart* was a petition to "locate anew," or "relocate," rather than, as here, a petition for the laying out or altering of a highway, to which different rules apply. It is plain from the court's opinion in *Hobart*, however, that the petition at issue in that case was indeed a petition for the laying out or altering of a highway, not a petition to "locate anew" a highway. See *Hobart* v. *County of Plymouth, supra* at 160.[10] Hence, the petition at issue in *Hobart* was precisely like the petition at issue here.

We also note that the judge's findings indicated that the way shown on the plaintiffs' plan as "Old Poplar Hill Road" had not been regarded or maintained as a county road for at least several decades. These findings provided strong additional support for the judge's conclusion that the commissioners intended to discontinue the parts of the old highway that they altered in 1845. See *Bennett* v. *Clemence*, 88 Mass. 10, 14-15 (1863).

We, therefore, conclude that the judge did not err in determining that the order the commissioners entered in 1845 automatically discontinued the way shown on the plaintiffs' plan as a county road. The order necessarily had that effect. See *Com-*

---

[10]Specifically, the opinion indicates that the petition was brought under Gen. Sts. (1860) c. 43, § 13 (providing for petitions for the laying out or altering a highway), rather than under Gen. Sts. (1860) c. 43, § 12 (providing for petitions to locate a highway anew).

*monwealth* v. *Boston & Albany R.R.*, 150 Mass. 174, 176-177 (1889).

2. *Alleged improper "vacating" of commissioners' 1847 discontinuance order.* The plaintiffs' additional contention, that the judge improperly "vacated" the commissioners' 1847 discontinuance order, merits little discussion. The judge did not vacate the 1847 order. He merely concluded that the 1847 order did not alter the effect of the commissioners' prior order of 1845 to discontinue all parts of the existing highway whose paths they had altered. As we have previously discussed, that conclusion was warranted in the circumstances.

*Judgment affirmed.*