NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-50                                         Appeals Court

ROBERT J. ERICKSON vs. CLANCY REALTY TRUST & others.[1]

No. 15-P-50.

Barnstable.     November 12, 2015. - January 6, 2016.

Present: Cohen, Grainger, & Wolohojian, JJ.

Way, Public: discontinuance. Estoppel.

Civil action commenced in the Superior Court Department on March 5, 2010.

The case was heard by Christopher J. Muse, J.

James B. Stinson for the plaintiff.
Harry R. Thomasson for the defendants.

GRAINGER J. Plaintiff Robert J. Erickson appeals from a declaratory judgment in Superior Court finding that Old County Road (road) in Eastham was discontinued by a 1903 Superior Court decree pursuant to "An Act To Promote The Abolition Of Grade Crossings," Chapter 428 of the Acts of 1890, as amended, St. 1891, c. 123 (act). The defendants are abutters or nearby

_____

[1] David R. Poitras, Deborah R. Sverid, and Scott R. Sverid.

landowners in Eastham. On appeal, the plaintiff argues that the road was not discontinued by the 1903 Superior Court decree and that it still operates as a public way.

1. Background. The facts are uncontested. The plaintiff's property is a parcel bounded on the northwest by the road, which extends from Route 6, a State highway, to an area past the plaintiff's property. The Cape Cod Rail Trail, formerly the New York, New Haven & Hartford Railroad (railroad), lies to the east of the plaintiff's property, and to the south are parcels owned by the Sverids. The plaintiff claims that the road is the only means of accessing his property; otherwise, it is landlocked.

The road was first laid out as a public way on June 19, 1721. It is shown on various maps throughout the eighteenth and nineteenth centuries. The path of the road crossed over to the eastern side of the railroad in Eastham, and crossed back to the western side of the railroad in Wellfleet -- a total of two grade crossings. In 1890, the act was passed to promote the abolition of such grade crossings and authorized the Superior Court, by decree, to confirm a recommendation by a neutral commission to extinguish a specified portion of an existing public way and to establish an alternate route that avoided any grade crossings. See St. 1890, c. 428, § 4. The parties agree

that the commission's report and a subsequent Superior Court decree[2] (decree) did so.

2. Discussion. The question presented is whether the road in its entirety, or only segments thereof, were discontinued. The plaintiff argues that the language of the decree discontinued only portions of the road that actually crossed the railroad, leaving other portions as disconnected internal segments that terminated at each crossing. The trial judge disagreed, and we review his decision as to questions of law, and questions of fact based entirely on documents, de novo.[3] See Zaskey v. Whately, 61 Mass. App. Ct. 609, 614 (2004).

a. The decree. We look first to the language of the petition and the decree. The petition is phrased in the disjunctive: "petitioners are of the opinion that it is

_____

[2] The decree found it necessary to discontinue the road "where it crosses the location of the railroad at grade about twenty three hundred feet (2300) northerly of the North Eastham passenger station in the town of Eastham," "where it crosses the location of the railroad at grade about fifty-five hundred (5500) feet southerly of the South Wellfleet passenger station in the town of Wellfleet," and where it crosses "the railroad location at grade about sixty-nine hundred (6900) feet southerly of the South-Wellfleet passenger station in the town of Wellfleet." The 1903 decree further established "a new highway forty (40) feet in width . . . to be constructed in the towns of Eastham and Wellfleet, westerly of the railroad location" "[a]s a substitute for the aforesaid crossings at grade." (Emphasis supplied.)

[3] Judgment was made following a bench trial limited to the following issues: (1) whether the 1903 decree discontinued the portion of the road leading up to the plaintiff's property, and (2) whether estoppel by deed is applicable.

necessary . . . that an alteration should be made in such crossings, in the approaches thereto, in the location of the public ways, or in the grades thereof" (emphasis supplied). Such language shows that the petitioners contemplated, at least as one possibility, the alteration or discontinuance of only the grade crossings.

Turning to the act itself, it provides that if "any portion of an existing public way should be discontinued [the commission] shall so specify" (emphasis supplied). St. 1890, c. 428, § 4. Finally, the clear language of the decree specifies only that the grade crossings are discontinued: "the county road where it crosses the location of the railroad at grade . . . [is] discontinued" (emphasis supplied). Compare with Bliss v. Inhabitants of Attleborough, 200 Mass. 227, 231 (1908) ("The commissioners . . . expressly provided in their report for many discontinuances . . . [as seen in the] statement that 'the way known as Starkey Avenue is hereby discontinued'"). Further, the commission described the new highway to be a substitute "for the aforesaid crossings at grade," and did not address the road in its entirety. We conclude that the trial judge erred in declaring as a matter of law that the language of the decree expressly discontinued portions of the road other than the grade crossings.

As a general rule, in the absence of an express discontinuance, a road is not discontinued by implication. "Once duly laid out, a public way continues to be such until legally discontinued." Carmel v. Baillargeon, 21 Mass. App. Ct. 426, 428 (1986), citing Preston v. Newton, 213 Mass. 483, 485 (1913). The town of Eastham has undertaken no official action to discontinue the road, such as holding a public hearing. See G. L. c. 82, § 21.

These conclusions, however, do not eliminate every possibility of discontinuation of the road as a whole. We cannot simply ignore that the strict application of the express language of the decree creates surviving segments of disconnected road that run between the discontinued grade crossings, serving no apparent remaining use. Our cases recognize that it is appropriate to rely on extrinsic evidence where a literal statutory construction yields an absurd or unworkable result. See, e.g., North Shore Realty Trust v. Commonwealth, 434 Mass. 109, 112 (2001), quoting from Champigny v. Commonwealth, 422 Mass. 249, 251 (1996) (declining to "adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable"). See Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982) (literal meaning of statute relating to private school pupils' right to

public transport would require town to subsidize travel to any location in United States).

Moreover, the Supreme Judicial Court has recognized that even "without express words to that effect," the creation of a substitute to an existing road, i.e., "an alteration of a way by the construction of it in a different place, where it will serve all the purposes for which it was designed or used," will discontinue "that part of it not included in the new location." Commonwealth v. Boston & Albany R.R., 150 Mass. 174, 176 (1889). This language requires factual determinations, namely findings related to "all the purposes" for which the original road "was designed or used." Ibid. Boston & Albany R.R. also recognizes the need for additional factual inquiry, namely, the effect of the contemplated discontinuance on adjacent landowners, landowners in the vicinity, and on the public. Id. at 177. This effect is to be measured at the time of the decree and not thereafter. "[W]hat occurred after the change was made [is] of little significance . . . . These facts are competent only so far as they tend to show the nature and condition of the subject matter under consideration at the time the adjudication was made." Id. at 176.[4]

---

[4] The instant case differs in its particulars from Commonwealth v. Boston & Albany R.R., supra, where the petition did not target specific locations but, rather, was aimed at alteration to the "hilly and rough" road. Id. at 176-177. We

Factual determinations were not made here as a consequence of the judge's reliance on the statutory language alone as sufficient to discontinue the entire road.  In light of our contrary reading, while confronted with the anomalous creation of freestanding sections of remaining road, we conclude that further proceedings are required to resolve the issue of discontinuation by implication.[5]

b.  Estoppel by deed.  We turn next to the defendants' assertion that the doctrine of estoppel by deed bars the plaintiff from his claim in this action.  Estoppel by deed prevents an assertion of title to property previously assigned to another.  See Gibbs v. Thayer, 6 Cush. 30, 32-33 (1850).  We observe as an initial matter that the plaintiff acquired his property many decades after the decree of 1903.  See Makepeace Bros. v. Barnstable, 292 Mass. 518, 524 (1935) ("The respondent's claim . . . is not strengthened by any theory of estoppel by deed, since the respondent was neither party nor

---

are instructed however by that decision in the appropriate avenues of inquiry to be applied in this and similar cases where we are faced with an overtly anomalous result.

[5] Implication may be derived from many rational bases, and we do not intend to imply that the judge is limited on remand to evidence falling within the strict limits outlined above.  As an example, we note that the plaintiff's property itself is not located on one of the internally disconnected segments between grade crossings.  Similarly, we express no opinion on the existence of an easement by necessity, providing the plaintiff an alternate route to a public way.  See, e.g., Flax v. Smith, 20 Mass. App. Ct. 149, 152 (1985).

privy to such deeds but is in the position of a stranger thereto").  Neither the plaintiff nor his predecessors in title can properly be characterized as transferors in connection with the act and the decree.  Accordingly, the circumstances normally triggering the invocation of this principle are absent here.

However, the defendants point to a deed executed by the plaintiff in connection with his transfer of an adjoining parcel in 1979:

> "NORTHWESTERLY by land of Joseph A. and Norman J. Poitras and by land of James T. and Gertrude A. Clancy, <u>being the middle line of Old County Road, as formerly laid out, now discontinued</u>, six hundred eighty-two and 74/100 (682.74) feet (emphasis supplied).

This language indisputably refers to the road as "now discontinued"; what is considerably less clear is whether the choice of words was intended as a conveyance of the plaintiff's interest in a right of passage over the road, or is simply a reference to the road for purposes of metes and bounds, adding as a gratuitous description that it was discontinued.[6] To the extent the defendants intend to press this issue on remand, the judge has discretion to consider evidence relevant thereto.  The judgment of the Superior Court is vacated, and the

---

[6] The record, paradoxically, also contains the deed by which Poitras acquired his property in 1995.  That deed refers to the "intersection of Old County Road" with no mention of its having been discontinued.

case is remanded for further proceedings in accordance with this opinion.

<u>So ordered</u>.