EDWARD WHITE *vs.* CITY OF BOSTON and another.[1]

No. 01-P-281.

Suffolk. October 18, 2002. - February 11, 2003.

Present: KANTROWITZ, KASS, & MILLS, JJ.

*Public Employment,* Police, Accidental disability retirement, Reinstatement of personnel. *Civil Service,* Police, Reinstatement of personnel. *Police,* Compensation.

A government employee who secured reinstatement to public employment, from which he had been wrongly barred, was entitled to damages equaling lost base salary, but not estimated amounts for overtime and paid details. [357-360]

CIVIL ACTION commenced in the Superior Court Department on November 24, 1995.

Following review by the Supreme Judicial Court, 428 Mass. 250 (1998), the plaintiff's claim for damages was heard by *Thayer Fremont-Smith,* J.

*Margaret M. Buckley* for the defendants.

*Terence E. Coles* (*John M. Becker* with him) for the plaintiff.

KASS, J. In the wake of the decision in *White* v. *Boston,* 428 Mass. 250 (1998) (*White I*), the plaintiff Edward White was reinstated as an officer on the Boston police force. He was to receive the compensation due a police officer from the time he became entitled to reinstatement until the time he was actually reinstated, a period that the parties have stipulated began on November 14, 1996, and ended October 28, 1998. In calculating White's back pay, a judge of the Superior Court included $37,617.43 in assumed overtime and $18,133.26 in assumed paid detail earnings. The question that has percolated to us in this second round of litigation is whether compensation upon

[1]Police commissioner of Boston.

reinstatement is straight salary or salary plus assumed overtime and detail pay. We decide, on the authority of *Selectmen of Framingham* v. *Municipal Ct. of Boston*, 11 Mass. App. Ct. 659 (1981), that the amount owed a public employee under G. L. c. 32, § 8, when there is a time gap between entitlement to reinstatement and the resumption of employment, is base compensation and does not include overtime and detail pay factors. Accordingly, we reverse the judgment.

*Facts.* Officer White was hurt in a car accident on September 15, 1980, while on duty. The injury, which was to his back, qualified White for accidental disability retirement. He assumed that status August 31, 1981, and began drawing accidental disability retirement pay. See G. L. c. 32, § 7. In 1994, an orthopedic medical panel examined and evaluated White's physical condition. On the basis of that panel's findings, the city's retirement board evaluated White as no longer disabled. White applied for reinstatement as a Boston police officer. The police department rejected White's application for reinstatement on the basis of information developed in a background check. After the effective date of St. 1996, c. 306, § 16 (discussed in the next paragraph), White renewed his request for reinstatement.

The holding of *White I* was that the city, through the police department, had no discretion to reject White's request for reinstatement. This was a result of a revision of G. L. c. 32, § 8, effected by St. 1996, c. 306, § 16. That legislation was adopted in reaction to the appearance of stories in the media about former public employees who were receiving disability retirement pensions and were also robustly — and profitably —engaged in physically demanding private work. *Id.* at 253 & n.4. The 1996 act provided that if a regional medical panel determines that a retiree is fit to perform the essential duties from which he had retired, his retired status ends and he goes back to his former job, if vacant, and, if not vacant, has a preference for the next available similar position. G. L. c. 32, § 8(2).

*Discussion.* The judgment granted by the Superior Court judge requires us to examine the reach of our decision in *Selectmen of Framingham* v. *Municipal Ct. of Boston*, 11 Mass. App. Ct. 659 (*Framingham*). We held there that when a civil service

employee is reinstated "without loss of compensation," whether by decision of the civil service commission or of a reviewing court, the government employer must pay the compensation fixed by statute or ordinance (base pay) but not amounts for which the employee is required to perform extra service or extra activity.[2] *Id.* at 660-661. In the *Framingham* case, the civil service employee was a policeman; he was not entitled to recover for overtime and police details that he might presumptively have worked. *Id.* at 661. We reasoned that overtime pay and police detail pay were speculative because the need for extra services was likely to be uncertain. The willingness of the police officer to perform the extra services was similarly uncertain: family requirements might limit or compel availability for extra duty; other commitments and interests might limit availability for duty. See *ibid.* We, therefore, wrote in the *Framingham* case that the principle that governed whether a public employee received overtime or special duty pay was whether the employee did the work. See *ibid.* Compensation of a public employee for a period of unlawful separation from public employment does not require the government employer to presume that, based on averages, the employee would have earned a certain amount of extra duty pay. In an earlier case, *Kandras* v. *Selectmen of Dedham*, 8 Mass. App. Ct. 184, 192 (1979), we had held that career incentive payments under G. L. c. 41, § 108L, ought not to be included in " 'the highest annual rate of compensation' of . . . a permanent full time police officer or patrolman" for purposes of calculating what was to be paid to a police chief. Incentive payment benefits, we observed, are available only to police officers "who have actually taken educational courses." *Ibid.*

White argues that the *Framingham* opinion is inapposite because he became entitled to reinstatement by operation of G. L. c. 32, § 8(2), while the police officer in the *Framingham* case became so entitled through judicial review of a decision of the civil service commission. There is nothing about that distinc-

---

[2]The parties in the instant case have agreed that White's base back pay was $101,437.94. This amount included longevity pay and night differential. The parties further agreed that the plaintiff would reimburse the State-Boston retirement system $40,276.25, the amount of disability benefits he received from November 14, 1996 through October 28, 1998.

tion that makes a difference in the conclusion that, upon reinstatement of a public employee, the back pay that the employee may recover does not include amounts for hypothetical extra duty.

Nor is there support for White's position in two cases to which he directs our attention. In *Kraft* v. *Police Commr. of Boston*, 410 Mass. 155, 157 (1991), the judgment under review included amounts for presumptive overtime and paid details but, as a subsequent opinion involving the same controversy pointed out, there had been no challenge to the extra duty pay component and the issue was taken as waived. *Kraft* v. *Police Commr. of Boston*, 417 Mass. 235, 242 (1994). The issue on appeal in *Police Commr. of Boston* v. *Gows*, 429 Mass. 14 (1999), was whether the police department had been so recalcitrant in restoring the reinstated officer to her rank that the officer was entitled to recover attorney's fees that she had run up in pursuit of her legal rights. The Superior Court judge had ordered that Officer Gows receive lost overtime and detail pay, computed on the basis of her extra-duty earnings before separation from the force. *Id.* at 19 & n.4. That extra-duty pay part of the judgment, however, was not a contested issue on appeal, and the opinion of the court in *Police Commr. of Boston* v. *Gows* does not discuss the question of entitlement to extra-duty pay.

Under the collective bargaining agreement between Boston patrolmen and the police department, overtime and paid details were to be assigned on a fair and equitable basis. That requirement does not remove the uncertainty about what assignments the plaintiff might choose to sign up for or accept. In addition, White's eligibility for extra-duty work was much limited because he could not carry a firearm pending completion of retraining at the police academy.

We have considered White's argument in his brief that under "back pay jurisprudence," earnings from missed opportunities as a result of unlawful separation from employment are generally recoverable. Such was the case, for example, as to tips for a hotel worker in *Local Joint Executive Bd. of Culinary/ Bartender Trust Fund* v. *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1157 (9th Cir.), cert. denied, 534 U.S. 973 (2001). Tips, however, are customarily the major share of compensation for

hotel employees who deliver direct service to guests. Statutory salaries are not based on an assumption of extra-duty pay. White's brief also directs our attention to a number of arbitration cases in which overtime and detail pay have been regarded as components of a "make whole" remedy by the arbitrator. Those arbitral decisions are not authority helpful in determining a question of statutory interpretation.

We adhere to the view that a government employee who secures reinstatement to public employment, from which he or she was wrongly barred, may recover base salary, but not estimated amounts for overtime and paid details (a category that applies peculiarly to police officers).

The judgment is reversed. A judgment for the plaintiff White shall be entered in the Superior Court awarding him back pay of $101,437.94, plus interest from November 14, 1996, on so much of the award that exceeds the disability benefits he received.

*So ordered.*