NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-900                                      Appeals Court


BOSTON POLICE DEPARTMENT  vs.  RONNIE C. JONES, & others.[1]


No. 19-P-900.

Suffolk.     May 12, 2020. - November 10, 2020.

Present:  Vuono, Milkey, & Desmond, JJ.


Police, Compensation.  Civil Service, Police, Reinstatement of
     personnel.  Labor, Police, Contempt, Damages, Overtime
     compensation.  Public Employment, Police, Reinstatement of
     personnel.  Damages, Back pay, Interest, Mitigation.
     Interest.  Judgment, Interest.  Municipal Corporations,
     Police, Governmental immunity.  Practice, Civil, Contempt,
     Declaratory proceeding.


     Civil action commenced in the Superior Court Department on
April 3, 2013.

     Following review by this court, 90 Mass. App. Ct. 462
(2016), a complaint for contempt, filed on June 8, 2018, was
heard by Robert N. Tochka, J.


     Alan H. Shapiro for Ronnie C. Jones & others.
     Helen G. Litsas for Boston Police Department.


─────────────────

     [1] Richard Beckers, Shawn Harris, Jacqueline McGowan, Walter
Washington, George Downing, and the Civil Service Commission.

VUONO, J.  This case is before us for the second time.  It began nearly two decades ago when ten Boston police officers were discharged from the Boston police department (department) after samples of their hair tested positive for cocaine.[2]  The officers appealed from the termination of their employment to the Civil Service Commission (commission).  In 2013, the commission upheld the discharges of four of the officers and determined that the remaining six officers, Ronnie C. Jones, Richard Beckers, Shawn Harris, Jacqueline McGowan, Walter Washington, and George Downing, the plaintiffs in this contempt case (officers), were entitled to reinstatement without loss of compensation or benefits.  The commission's decision was affirmed with slight modifications by a judge of the Superior Court in an order dated October 6, 2014.[3]  We affirmed that judgment in a decision released on October 7, 2016.  See Thompson v. Civil Serv. Comm'n, 90 Mass. App. Ct. 462 (2016).[4]  Thereafter, a second round of litigation ensued.

---

[2] The officers were discharged between 2001 and 2007.

[3] The judge ordered that each of the six officers receive back pay retroactive to the date of his or her discharge and not to the date of the first hearing before the commission as the commission had ordered.

[4] A full description of the procedural history and factual background relating to the discharges and the commission's decision is set forth in our prior decision and need not be repeated here.

Despite extensive negotiations, the parties failed to agree on the appropriate remedy.  Ultimately, the officers brought an action for civil contempt, see Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982).  As we discuss in more detail later, the parties identified several legal issues in dispute regarding the calculation of back pay and benefits, and they asked a judge of the Superior Court to resolve those issues based on stipulated facts.  In a detailed memorandum of decision, the judge addressed each issue.  A judgment in accordance with that memorandum entered.  Not content with the judge's rulings, and still not able to reach an agreement, both sides appealed from that judgment.[5]

_____

[5] This case comes to us in an unusual posture.  Although the plaintiffs filed a complaint for civil contempt, ultimately, they did not request that the department be held in contempt. Instead, the parties subsequently asked the judge to resolve certain questions on which they could not agree.  To the extent that the department, by agreement with the officers, asked the judge to remove uncertainty and clarify its legal duties under the prior judgment, this action resembles an action for a declaratory judgment.  Passing over the propriety of the manner in which the parties proceeded, the issues have been fully briefed and the logical choice at this point is to treat the judge's decision as a declaration of the parties' rights and duties.  As a result, and because the judge's decision is based solely on documentary evidence and the construction of applicable statutes, our review is de novo.  See Erickson v. Clancy Realty Trust, 88 Mass. App. Ct. 809, 810 (2016) ("we review [the trial judge's] decision as to questions of law, and questions of fact based entirely on documents, de novo").  See also Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 507 (2019).

Background.  We recite only those facts necessary to provide context for our discussion of the issues.  Following our decision in Thompson, 90 Mass. App. Ct. 462, Officers Harris, Downing, and Washington were reinstated.  These three officers were returned to duty and restored on the active payroll on September 11, 2017.  They returned to full duty in April 2018, after they completed the required training.  Officer Jones chose to retire, and Officers McGowan and Beckers chose not to return to the department and, at the time of this appeal, were seeking to retire.  On February 16, 2018, the department made partial payments consisting of base pay, holiday pay, shift differential, and educational pay to Officers Harris, Downing, Washington, and Jones.  The payments included certain contractual buy backs for unused vacation, personal days, and sick leave, but the department did not include any payments for estimated amounts of overtime and detail pay that the officers presumably would have earned during the period when they were unlawfully separated from their employment.  In addition, the department deducted wages earned by these officers from their interim employment during the back pay period, including wages earned from second and third jobs and overtime.  The department also excluded any compensation for periods where these officers

were not employed on the ground that they had failed to mitigate their damages.[6]

The department treated Officers Beckers and McGowan differently. It is undisputed that these two officers did not earn any income following the termination of their employment. Several years after he was discharged, in August 2009, Officer Beckers moved to Honduras where he owns and operates a bed and breakfast establishment. He has not made any profit. Since Officer McGowan's discharge, she has provided full-time care for her mother, with whom she lives. The department took the position that Officers Beckers and McGowan were not entitled to any back pay because they did not mitigate their damages by obtaining interim employment.

As previously noted, after the officers filed a complaint for civil contempt, the parties agreed to submit a joint stipulation delineating the issues that required resolution and a joint stipulation of facts. The department also submitted a report prepared by Dr. Christopher Erath, an economist retained by the department to calculate each officer's economic losses as a result of his or her wrongful discharge. Following a nonevidentiary hearing, the judge ruled as follows:

---

[6] By agreement, the department withheld amounts due to the State Board of Retirement (board) from the payments made to Officers Harris, Downing, Washington, and Jones, and remitted those amounts directly to the board.

"[(1) All six officers] are entitled to back pay for all periods since their Boston Police Department termination . . . . (2) [The department] is not entitled to offset from any back pay awarded to the six officers, any overtime earnings and wages they earned from second and/or third jobs after [the department] terminated them. (3) The six officers' back pay award should not include pay they believe they would have received from overtime pay [or] details. (4) The six officers are entitled to prejudgment interest on back wages from the date they were each terminated. The six officers are not entitled to postjudgment interest. (5) The six officers are not entitled to reimbursement from [the department] for the additional tax burden created after receiving large lump sum payments."

The judge did not calculate the back pay awards and interest.

Discussion. I. The officers' appeal. The officers challenge three aspects of the judge's decision. First, they claim that their back pay awards should include compensation for estimated overtime and detail pay. Second, they assert that they are entitled to postjudgment interest. And third, they argue that they should receive additional compensation to relieve them of the tax burden caused by receiving large lump sums in back pay. We address each issue in turn.

A. Overtime and detail pay. General Laws c. 31, § 43, provides that when the commission or a reviewing court orders the reinstatement of a civil service employee who has been discharged without just cause, "the person concerned shall be returned to his position without loss of compensation or other rights." In prior decisions, we have held that the quoted phrase does not impose an obligation on the government employer

to pay more than the employee's salary or base pay as fixed by statute or ordinance. See White v. Boston, 57 Mass. App. Ct. 356, 360 (2003); Selectmen of Framingham v. Municipal Court of Boston, 11 Mass. App. Ct. 659, 660-661 (1981) (interpreting G. L. c. 31, § 44, now appearing as G. L. c. 31, § 43). In Selectmen of Framingham, supra, we held that a police officer who was unlawfully separated from his employment was not entitled to recover pay for special details he could have worked during the period of separation. We reasoned that because the need for extra services was likely to be uncertain, compensation for such pay could not be calculated without speculation. Over twenty years after our decision in Selectmen of Framingham, we decided White. In that case, we relied on our decision in Selectmen of Framingham to conclude that the plaintiff, a police officer who secured reinstatement nearly two years after he was unlawfully barred from returning to his employment with the police department, was entitled to compensation consisting of "straight salary" and not "salary plus assumed overtime and detail pay." White, supra at 357. We specifically considered the question whether overtime and detail pay should be regarded as components of a "make whole" remedy, and we concluded that a government employee may recover base salary but not estimated amounts of overtime and detail pay. See id. at 360. Here, relying on our decisions in Selectmen of Framingham and White,

the judge concluded that the officers were not entitled to recover overtime and detail pay.

At the core of the officers' claim that their back pay award should include estimated amounts for overtime and paid details is the meaning of the phrase "without loss of compensation or benefits."  As the officers acknowledge, we have consistently interpreted that phrase as excluding earnings from potential overtime or paid details.  See White, 57 Mass. App. Ct. at 360; Selectmen of Framingham, 11 Mass. App. Ct. at 660-661.  The Legislature has amended G. L. c. 31 several times without attempting to alter our interpretation.  "It is a well-settled rule of statutory interpretation that, when a statute after having been construed by the courts is re-enacted without material change[,] . . . the Legislature . . . is presumed to have adopted the judicial construction put upon it."  Hertrais v. Moore, 325 Mass. 57, 61 (1949), quoting Nichols v. Vaughan, 217 Mass. 548, 551 (1914).  See Suliveres v. Commonwealth, 449 Mass. 112, 116 (2007).  Thus, our interpretation "is supported by legislative approval," Nichols, supra, and, as such, absent an agreement between the parties, we conclude the officers may not recover estimated amounts for overtime and paid details.

In reaching our conclusion, we have not ignored the officers' argument that the circumstances presented here are different than those presented in White.  In that case, the

period of time for which the officer was entitled to compensation was two years, see White, 57 Mass. App. Ct. at 356, whereas the time period for which the officers are owed compensation here is significantly longer.[7]  Additionally, we have considered the fact that sophisticated, nonspeculative methods of calculating overtime and detail opportunities exist.[8]  Nonetheless, our precedents, coupled with the subsequent legislative history, require us to apply the bright-line rule that estimated overtime and detail pay is to be excluded from a back pay award.[9]  See White, supra at 360; Selectmen of Framingham, 11 Mass. App. Ct. at 660-661.

---

[7] The officers allege that Beckers is entitled to back compensation for a period of over fourteen years; Downing, over thirteen years; Harris, over fourteen years; Jones, fifteen years; McGowan, over fourteen years; and Washington, over fourteen years.

[8] For example, the National Labor Relations Board suggests a number of methods that can be used to calculate the amount of overtime that a wrongfully discharged employee would have worked during the period of separation.  See Nat'l Labor Relations Bd., Case Handling Manual, Part 3: Compliance Proceedings, § 10540 (Aug. 2020), https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/compliance-manual-august-2020.pdf [https://perma.cc/5SW9-SEQK].  These methods include, depending on the circumstances, determining the average earnings of the discharged employee prior to termination; the earnings of comparable employees; or, where the back pay period is brief, the earnings of a replacement employee who filled the position vacated by the wrongfully discharged employee.  Id.

[9] Relying on Connolly v. Suffolk County Sheriff's Dep't, 62 Mass. App. Ct. 187 (2004), the officers also argue that the availability of overtime and paid detail is a factual inquiry

B.  Postjudgment interest.  The judge determined that the officers are not entitled to recover postjudgment interest on their awards of back pay on the ground of sovereign immunity. We agree.

"Municipal liability implicates the doctrine of sovereign immunity, which protects the public treasury from unanticipated money judgments."  Todino v. Wellfleet, 448 Mass. 234, 238 (2007).  "[E]ntities entitled to sovereign immunity are not liable for interest under G. L. c. 235, § 8, absent an unequivocal statutory waiver."  Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 465 Mass. 584, 598 (2013).  As the judge correctly observed, "[t]he general rule is that 'the Commonwealth [and a municipality] . . . is not liable for postjudgment interest in the absence of a clear statutory waiver of sovereign immunity in that regard,' Sheriff of Suffolk County[,] [supra at] 597, quoting Chapman v. University of Mass. Med. Ctr., 423 Mass. 584, 586 (1996)."  See Brown v. Office of

and that they are able to prove their entitlement to these categories of compensation without speculation.  In Connolly, supra at 191, the plaintiff correction officers alleged that the defendant discriminated against them by denying them the opportunity to work overtime.  The only category of compensation at issue in Connolly, based on its specific facts, was overtime pay.  We ultimately concluded that "[t]he plaintiffs simply could not prove that they would likely have worked any overtime shifts."  Id. at 198-199.  Whether overtime required by the municipality and not associated with detail work should fall within the definition of the compensation has not been addressed by the parties or with specificity in our previous cases.

the Comm'r of Probation, 475 Mass. 675, 677 (2016) ("G. L. c. 235, § 8, . . . does not apply to claims against the Commonwealth or its subdivisions. . . . Thus, public employers are not liable for postjudgment interest unless some other statute clearly waives sovereign immunity with respect to such interest").

As the officers concede, there is no express statutory waiver of sovereign immunity from liability for postjudgment interest. The postjudgment interest statute, G. L. c. 235, § 8, does not affect such a waiver.[10] However, the absence of an explicit wavier does not end the inquiry. "If sovereign immunity is not waived expressly by statute, we consider whether governmental liability is necessary to effectuate the legislative purpose" (citation omitted). Todino, 448 Mass. at 238. Thus, the question presented is whether sovereign immunity is waived by necessary implication. See id. at 239.

"Sovereign immunity advances important public policies, and the 'rules of construction governing statutory waivers of sovereign immunity accordingly are stringent'" (citation omitted). Brown, 475 Mass. at 679. "Sovereign immunity from liability for postjudgment interest by necessary implication

---

[10] General Laws c. 235, § 8, provides: "interest shall be computed upon the amount of [an] award . . . from the time when made to the time the judgment is entered . . . at the same rate per annum as provided for prejudgment interest."

requires 'uncommonly forceful language' indicating a legislative intent that the Commonwealth should compensate plaintiffs without any loss whatsoever, including loss of the time value of the money awarded."  Id., quoting Todino, 448 Mass. at 235. General Laws c. 31, § 43, provides that if the commission reverses the action of the appointing authority, "the person concerned shall be returned to his position without loss of compensation or other rights."  This language is not sufficiently "forceful" for us to conclude that the Legislature clearly intended recovery for postjudgment interest.  Brown, supra, quoting Todino, supra.

Todino, on which the officers primarily rely, is not to the contrary.  In that case, the Supreme Judicial Court interpreted G. L. c. 41, § 111F, which allows police officers to recover wages of which they are deprived during periods of incapacity through no fault of their own.  The court held that the statute waives sovereign immunity from liability for postjudgment interest by necessary implication, because it provides that such officers be compensated "without loss of pay for the period of such incapacity" and that "[a]ll amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation."  See Todino, 448 Mass. at 237-240.  Given the clear legislative intent to provide complete relief, the Supreme

Judicial Court concluded that prejudgment interest was deemed "essential to vindicate fully an employee's express right to continued, timely compensation." Id. at 238. But no similar language "indicating such a clear legislative intent to compensate specifically for the time value of money owed," is present in G. L. c. 31, § 43. Brown, 475 Mass. at 681. Accordingly, the judge correctly concluded that sovereign immunity bars the officers from recovering postjudgment interest on the awards at issue. See id.

C. Tax burden. The officers claim they are entitled to an additional monetary award to offset the negative tax consequences of a lump-sum back pay award.[11] Noting the absence of any authority in Massachusetts for so-called "tax enhancement damages," the judge concluded that the officers were not entitled to receive compensation for any additional tax liability.

While there are no reported decisions from the courts of the Commonwealth addressing this issue, the question is resolved by applying the same analysis that we used to reach the

---

[11] This type of tax offset is referred to by various names, including "tax enhancement remedy" and "tax enhancement damages," Arneson v. Callahan, 128 F.3d 1243, 1247 (8th Cir. 1997), "tax-effect damages," Eshelman v. Agere Sys., Inc., 554 F.3d 426, 441-443 (3d Cir. 2009), and "tax-component award," Vega v. Chicago Park Dist., 954 F.3d 996, 1009-1010 (7th Cir. 2020).

conclusion that sovereign immunity bars recovery for postjudgment interest. In sum, in the absence of an express waiver or waiver by necessary implication, the Commonwealth and its instrumentalities, here the department, are immune from liability for tax enhancement damages on an award of back pay. See Brown, 475 Mass. at 679.

II. Department's cross appeal. The department likewise challenges three aspects of the judge's decision. First, the department argues that the officers are not entitled to prejudgment interest. Second, the department claims that it met its evidentiary burden on mitigation of damages and, therefore, Officers Harris, Downing, Jones, and Washington are not entitled to back pay for the periods in which they did not work and that Officers McGowan and Beckers are not entitled to any back pay. Lastly, the department claims that the officers' back pay award should be offset by any earnings and wages that the officers earned from second and third jobs and overtime following the termination of their employment. We address each issue in turn.

A. Prejudgment interest. The judge concluded that the officers are entitled to prejudgment interest on the ground that G. L. c. 231, § 6C, which provides for an award of interest in all actions based on contractual obligations, waives sovereign

immunity.[12]  In reaching his conclusion, the judge principally relied on our decision in Thibodeau v. Seekonk, 52 Mass. App. Ct. 69 (2001), and our interpretation in that case of G. L. c. 231, § 6C.  We agree that the question is controlled by Thibodeau and that the department is liable for prejudgment interest.

In Thibodeau, supra at 70, the plaintiff firefighter had been demoted from his position as captain to that of lieutenant. After successfully challenging that demotion, he sought prejudgment interest on an award of back wages.  See id.  We concluded that, pursuant to G. L. c. 231, § 6C, interest on a back pay award due to the firefighter should have been calculated from the date of the firefighter's demotion instead of from the date he filed his action in the Superior Court.  See id. at 73-74.  Although Thibodeau involved a slightly different question, by analogy it stands for the proposition that where, as here, a contractual relationship exists between the employee and the government employer, § 6C waives sovereign immunity with

---

[12] General Laws c.  231, § 6C, states:

"In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand."

regard to prejudgment interest.[13]  Moreover, both in Selectmen of

Framingham, 11 Mass. App. Ct. at 662, and in White, 57 Mass.

App. Ct. at 360, we affirmed awards of interest, albeit without

discussion.  We also agree with the judge's observation that the

Legislature, presumably, is aware of our prior decisions

awarding interest in similar circumstances, and it has not

enacted legislation to clarify or overrule these decisions.  See

Hertrais, 325 Mass. at 61.

B.  Mitigation.  The department asserts that the judge

erred in concluding that it failed to meet its burden to show

that the officers did not mitigate their damages.  We disagree.

It is well established that a public employee who is

wrongfully discharged has a duty to mitigate damages by

"dispos[ing] of his time in a reasonable way, so as to obtain as

large compensation as possible, and to use honest, earnest and

intelligent efforts to this end."  Sheriff of Suffolk County,

465 Mass. at 589, quoting Maynard v. Royal Worcester Corset Co.,

200 Mass. 1, 6 (1908).  The employer, however, bears the burden

_____

    [13] We are not persuaded by the department's argument that
the officers have no contractual relationship with the
commission and that therefore G. L. c. 231, § 6C, does not
apply.  The Supreme Judicial Court has held that interest is
available in actions based on "obligations that derive from an
agreement and those imposed by statute," Lexington v. Bedford,
378 Mass. 562, 576 (1979), and we have held that interest under
§ 6C on a civil service employee's back pay award is
appropriate, Selectmen of Framingham, 11 Mass. App. Ct. at 662.

of proving that the employee failed to mitigate his damages.
See Sheriff of Suffolk County, supra at 592.  In order to meet
this burden, the employer must show the following:

> "(a) one or more discoverable opportunities for comparable
> employment were available in a location as convenient as,
> or more convenient than, the place of former employment,
> (b) the improperly discharged employee unreasonably made no
> attempt to apply for any such job, and (c) it was
> reasonably likely that the former employee would obtain one
> of those comparable jobs" (citation omitted).

Id.  The duty to find "comparable employment" does not require
the employee to "go into another line of work [or] accept a
demotion."  Id. at 593, quoting Ford Motor Co. v. Equal
Employment Opportunity Comm'n, 458 U.S. 219, 231 (1982).  The
employer must therefore show the availability of substantially
similar employment that "offer[ed] similar long-term benefits
and opportunities for promotion as compared to the original
position."  Sheriff of Suffolk County, supra at 593, citing
Greenway v. Buffalo Hilton Hotel, 951 F. Supp. 1039, 1061
(W.D.N.Y. 1997), aff'd as modified, 143 F.3d 47 (2d Cir. 1998)
("In order for the work to be comparable or substantially
similar, the new position must afford a plaintiff virtually
identical promotional opportunities, compensation, job
responsibilities, working condition, and status as the former
position").

It is undisputed that four of the officers obtained interim
employment during some portions of the time period in question.

Officer Downing obtained employment as a security guard. Officer Washington worked as a delivery driver with United Parcel Service (UPS). Officer Jones earned income by working for a tree-trimming service, and Officer Harris obtained a position with financial services provider Fidelity from which he resigned after two years. In addition, there was evidence that two of the four officers who were discharged and not reinstated, Officers Hogan and Wade, obtained employment as a correction officer and as an officer with the United States Transportation Security Administration (TSA), respectively. The judge considered this evidence and concluded that none of these jobs offered the same level of stability, benefits, or opportunities for promotion as employment as a Boston police officer provided. The judge wrote:

> "Notably, the position of Boston police officer offers substantial opportunities for promotion and numerous benefits, such as . . . opportunities for further job training. As to the issue of job stability, this litigation illustrates the difficulties associated with terminating Boston police officers thereby demonstrating that the position is extremely stable."

In addition, the judge observed that even if comparable employment was available to the officers on the date of their respective terminations, the department failed to show that it

was reasonably likely that the officers could obtain such
employment given the reason for their discharge.[14]

We agree with the judge's reasoning and his conclusion.  It
matters not, as the department argues, that some of the officers
were not employed for some periods of time or that Officers
Beckers and McGowan did not obtain employment as a TSA officer,
a UPS driver, a correction officer, or something similar.  Even
assuming that the officers did not use reasonable efforts at all
times to find suitable employment "so as to obtain as large
compensation as possible," Sheriff of Suffolk County, 465 Mass.
at 589, the department would not prevail because it has not
shown the availability of comparable employment and the
likelihood that the officers could have obtained it, see id. at
592.

The department relies on Quint v. A.E. Staley Mfg. Co., 172
F.3d 1, 16 (1st Cir. 1999), where the United States Court of
Appeals for the First Circuit adopted a rule that "relieve[s]
the defendant-employer of the burden to prove the availability
of substantially equivalent jobs . . . once it has been shown
that the former employee made no effort to secure suitable

---

[14] The judge observed:  "Given that [the department]
terminated each of these four officers for essentially using
cocaine while they were employed as Boston police officers, it
is highly unlikely that the officers could obtain a comparable
position even if [the department] had produced evidence to
suggest that such opportunities were available."

employment" and urges us to adopt a similar rule.  However, the Supreme Judicial Court expressly declined to adopt this rule in Sheriff of Suffolk County, 465 Mass. at 594.  Instead, the court agreed with "the Sixth Circuit that 'basic principles of equity and fairness mandate that the burden of proof must remain on the employer because the employer's illegal discharge of the employee precipitated the search for another job.'"  Id. at 594-595, quoting National Labor Relations Bd. v. Westin Hotel, 758 F.2d 1126, 1130 (6th Cir. 1985).  Because the department has not met its burden on mitigation, the officers are entitled to an award of back pay that covers the entire period of their unlawful separation from the department.[15]

C.  Income earned from overtime and second and third jobs.  The department asked the judge to "offset from any back pay awarded to the six officers[] any overtime earnings and wages that they earned from second and/or third jobs."  As we have noted, the officers agreed that unemployment compensation and "straight-time earnings from primary interim jobs" were properly deducted from their back pay award, but they claimed that earnings, including overtime earnings, from second and third jobs should not be subtracted.  The judge agreed with the

------

[15] The officers agreed that unemployment compensation and "straight-time earnings from primary interim jobs" were properly deducted from their back pay award.

officers, reasoning that "[a]s a matter of fairness, such offsets are inappropriate."  He further explained:  "The officers who worked overtime and/or second and third jobs chose to sacrifice their own time <u>outside</u> of their regular working hours to obtain these additional earnings" and "[a]llowing [the department] to offset [these additional earnings] from any back pay . . . would result in additional [losses] to the officers." The department argues that because a back pay award should not make a public employee "more than whole," as a matter of law, it is entitled to deduct all of the officers' earnings acquired during the interim period regardless of the source of those earnings.

While there are no reported decisions from courts in the Commonwealth addressing this precise issue, the officers urge us to adopt the reasoning of the judge and conclude that because they are not entitled to receive compensation for the estimated overtime and paid detail they would have worked, the department is not entitled to subtract their earnings, including overtime earnings, from second and third jobs.  We agree.  Fairness is a factor that should not be overlooked in any circumstances and no less so here.  Consequently, we conclude that the so-called "extra" amounts earned by the officers, that is, the amounts earned in addition to their base salary from their primary

interim employment, should not be subtracted from their back pay awards.[16]

Conclusion. We affirm the judgment and remand the case to the Superior Court for a determination of the back pay awards and interest consistent with this opinion.

So ordered.

---

[16] The officers also point to cases decided by the National Labor Relations Board and the National Labor Relations Board Casehandling Manual for Compliance Proceedings (Manual), https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/chm30.pdf [https://perma.cc/P5KC-RBKF]. See generally 29 U.S.C. §§ 151 et seq. With respect to overtime earnings, the Manual provides that "interim earnings based on hours in excess of those available (or worked) at [the] gross employer [are] not deductible." Manual § 10554.3. As regards earnings from second or third jobs, the Manual states in relevant part: "When a discriminatee holds two separate jobs simultaneously during the backpay period, income from the second job is generally not deductible against gross backpay." Id. at § 10554.4.